Argued November 23, reversed and remanded December 23, 1970

STATE OF OREGON, *Respondent, v.*
JAMES EDWARD SMITH, *Appellant.*
478 P2d 417

*Gerald R. Pullen,* Portland, argued the cause and filed the brief for appellant.

*Jacob B. Tanzer,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FORT, J.

Defendant was indicted, tried and convicted by a jury of forcible rape. He appeals from the resulting judgment, asserting three assignments of error. We will consider them seriatim.

The first arises out of a denial of a motion for mistrial made because of a question asked on cross-examination by the prosecutor of the defendant. During the defendant's case-in-chief he called as a witness a woman with whom he was living at the time of the commission of the crime. She testified she was not married to the defendant, had permitted him to move into her apartment, and that she had borne him two children. No objection was made to any of this testimony.

Following her testimony, the defendant took the stand. At the last of his direct examination by his own attorney, the following transpired:

"Q And the police took you to jail, is that correct?

"A Yes.

"Q Have you ever been in jail before that time?

"A One time for about a day for child support, and that is the only time I ever been in jail before, never before.

"Q Never been arrested?

"A Never been arrested before. * * *

"* * * * *

"Q Child support was when? How long ago?

"A Pardon?

"Q The child support problem was how long ago?

"A Oh, must have been about two years ago; a year and one-half, two years ago. And finally got married.

"MR. SHILEY: No further questions.

"CROSS-EXAMINATION

"BY MR. BENNETT:

"Q How many children do you have out and about in the community?

"MR. SHILEY: Objection.

"THE COURT: Sustained.

"MR. SHILEY: I have a motion for the Court also."

The motion for a mistrial was then made in chambers. The court denied it. Upon resuming the bench the court clearly and emphatically instructed the jury to disregard the question to which the objection had been made and sustained and to give it no consideration.

Since the state in its brief and in oral argument expressly concedes that it was error under the foregoing circumstances for the district attorney to have asked the question, we neither consider nor decide that issue.

The general rule is that a motion for mistrial

is addressed to the sound discretion of the trial court, and its exercise will not be upset except for a clear abuse. *State v. Keffer,* 3 Or App 57, 471 P2d 438 (1970); *State v. Woolard,* 3 Or App 291, 472 P2d 837 (1970) modified 92 Adv Sh 789, — Or —, 484 P2d 314, 485 P2d 1194 (1971); *State v. Steffes,* 2 Or App 163, 465 P2d 905, Sup Ct *review denied* (1970); *State v. Elkins,* 248 Or 322, 432 P2d 794 (1967); *State v. Hoffman,* 236 Or 98, 385 P2d 741 (1963).

Forensic misconduct on the part of the prosecutor then is the problem here involved.

"Prosecutor's forensic misconduct may be generally defined as any activity by the prosecutor which tends to divert the jury from making its determination of guilt or innocence by weighing the legally admitted evidence in the manner prescribed by law. It commonly involves an appeal to the jurors' prejudices, fears, or notions of popular sentiment by presenting to them inadmissible evidence; or urging them to make inferences not based on the evidence; or to disregard the evidence altogether and base their determination on wholly irrelevant factors. The jury may also be encouraged to disregard the weighing process prescribed by law and substitute one more favorable to the state, or otherwise to misapprehend its functions.

"Actually misconduct will usually involve some combination of these factors, and in fact the more that are included the more effective will be the prosecutor's argument in swaying the jury. * * *" Note, *The Nature and Consequences of Forensic Misconduct in the Prosecution of a Criminal Case,* 54 Colum L Rev 946, 949 (1954).

Thus, it is apparent a wide, almost infinite, variety of circumstances in the trial of a case may give rise to such a complaint.

In an annotation in 109 ALR 1090-92 (1937), it is pointed out:

"Improper questions may be prejudicial in various ways, including the following: They may plainly convey information excluded by the rules of evidence; may hint at the existence of significant though inadmissible facts, with or without a suggestion as to their exact nature; may, by the assumptions therein contained, and notwithstanding the answers being prevented, impress upon the jury, by a mere show of proof, matters which are not admissible in evidence and which perhaps could not be proved, as inferred, even if opportunity were afforded; and may, by reason of the objections made, emphasize the facts suggested more effectively than might be done by answers admitted without objection.

"* * * * *

"* * * *The vital inquiry usually is whether or not the verdict was substantially influenced by the improper questions.* Ordinarily the good or bad faith of counsel, and the extent of the bad faith where it exists, are elements which are emphasized in the decisions; but as good faith is not ordinarily a shield to a litigant whose counsel seriously errs in the matter under consideration, bad faith, without actual prejudice resulting, of course gives no cause for complaint." (Italics supplied.)

■ We agree that "The vital inquiry usually is whether or not the verdict was substantially influenced by the improper questions." First, the question as asked here does not indicate such bad faith on the part of the prosecutor as would warrant reversal upon that ground alone. Second, the witness did not answer the question. Third, the objection was immediately sustained. Lastly, no further discussion took place in the presence of the jury until the court clearly and unequivocally told them, "this is not a matter for your

consideration," and "it's no concern to you in this case here." We think the court did "unring the bell." *State v. Louie Hing*, 77 Or 462, 469, 151 P 706 (1915).

■ The second assignment of error challenges the admission in rebuttal by the state of the opinion evidence of a neighbor that the general reputation of the prosecutrix for truth and veracity was good. The question was duly objected to, but it was overruled, and answered in a manner adverse to the defendant. The state in its brief states:

> "We concede at the outset that there was no legal basis for the question asked and answer elicited. The reputation of one's own witness for truth and veracity is not admissible until such time as it is attacked. In this case there was no direct attack upon veracity. * * *"

On cross-examination of the witness it was developed that she wasn't sure what the word veracity meant but did know the meaning of the word truth. However, she also testified that she had never discussed with anybody else nor heard any comments concerning whether the prosecutrix was considered to be a truthful person. The trial court then instructed the jury:

> "* * * But the latter part of her testimony regarding her reputation for truth and veracity, I'm going to instruct you to disregard it because she responded that she never talked to anybody in the community about her reputation for telling the truth. And so that—that would be removed from your consideration, that aspect of the testimony."

The state contends that this sufficiently corrected the court's error in admitting the testimony in the first place. We disagree.

Here, the jury was faced in a forcible rape

case with flatly conflicting testimony between the defendant and the prosecutrix concerning the use of force. Both acknowledged that intercourse took place in her bedroom during the early evening hours. Defendant and prosecutrix occupied adjoining halves of a duplex, and had lived as neighbors for several months. Both agreed she had voluntarily admitted defendant to her home at the time in question.

Thus, the jury was directly faced with the question of whether to believe the prosecutrix or the defendant concerning the crucial element of force.

The clear effect of the challenged testimony was the assertion that the witness, a neighbor, believed that the prosecutrix was a truthful woman. Furthermore, the court, in withdrawing the question and her answer from the jury, did not do so unequivocally but only because the witness "never talked to anybody in the community about her reputation for telling the truth."

In *State v. Louie Hing*, supra, the court said:

"* * * The language of Mr. Chief Justice McBride in *State v. Rader*, 62 Or. 37 (124 Pac. 195), is peculiarly appropriate to the instant case:

"'While in some cases an express instruction to the jury to disregard testimony injuriously admitted is properly held to cure the error, yet the courts are cautious in the application of this rule. It is not an easy task to unring a bell, nor to remove from the mind an impression once firmly printed there, and the withdrawal of the testimony should be so emphatic as to leave no doubt in the mind of the juror as to the unequivocal repudiation by the court of the erroneously admitted matter, and even then, in a case where the testimony is evenly balanced or contradictory, courts hesitate to sanction such withdrawal, though it seems absolutely necessary to permit this course in some instances.'" 77 Or at 469.

The admitted error was clearly prejudicial. It concerned a matter basic to the jury's decision—who to believe. We cannot say that the ultimate attempted withdrawal of the question and answer did "unring the bell."

The remaining assignment of error relates to other allegedly prejudicial matters occurring during the trial. The defendant made no objection or other appropriate motion designed to call these matters to the attention of the trial judge. Accordingly, we do not consider them.

The judgment is reversed and remanded for a new trial.