Submitted January 17, reversed and remanded on Counts 1, 2, 4, 5, and 6; otherwise affirmed October 23, 2013

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## SHAHIN FAROKHRANY,
*Defendant-Appellant.*

Washington County Circuit Court
C091802CR; A146723

312 P3d 584

Peter Gartlan, Chief Defender, and Daniel C. Bennett, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Nakamoto, Judge, and De Muniz, Senior Judge.

DE MUNIZ, S. J.

## DE MUNIZ, S. J.

Defendant appeals his convictions for unlawful distribution of a controlled substance to a minor, ORS 475.906; unlawful possession of cocaine, ORS 475.884; attempted sexual abuse in the second degree, ORS 163.425; sexual abuse in the third degree, ORS 163.415; and driving under the influence of intoxicants, ORS 813.010. Defendant assigns the following errors to the trial court: (1) the trial court erred by imposing a "chapter 163" assessment for his conviction of attempted sexual abuse in the second degree; (2) the trial court erred in denying defendant's requested curative instruction after the prosecutor purported to describe to jurors during *voir dire* what the prosecutor contended was the law of Iran or Saudi Arabia in a rape case; (3) the trial court erred in instructing the jury that it could find defendant guilty by a nonunanimous verdict; and (4) the trial court erred in convicting defendant on two counts by nonunanimous jury verdicts. We conclude that the trial court's failure to give defendant's proferred curative instruction to the jury was an abuse of discretion requiring that we reverse defendant's convictions.[1]

The facts are as follows. During the afternoon of June 8, 2009, defendant met with high school students L and H. Defendant knew L through L's internship at the Home Depot where defendant worked. Defendant gave L $120 to purchase cocaine from L's drug dealer. After L purchased the cocaine, defendant drove the group to defendant's apartment, where the three used the cocaine.

While at the apartment, defendant began showing H and L pornographic websites he claimed were owned by his cousins. Defendant locked the door when L stepped outside to smoke a cigarette. He then told H that he found her attractive and that he owned several strip clubs, and offered to obtain a false ID card for her so she could work at the clubs. Defendant then engaged in "sexual talk" with H and requested that she submit to cunnilingus. Defendant also asked H if he could touch her breast. When she refused, defendant grabbed H's breast for a few seconds. The contact

---

[1] Because we agree with defendant's second assignment of error and reverse defendant's convictions, we do not address defendant's other assignments of error.

ended when L began knocking on the door. Defendant and H went outside to meet L. H and L insisted defendant drive them home.

Later, police officers visited defendant at his Home Depot work site. The officers informed defendant that they had received a report that defendant had engaged in inappropriate conduct with minors. Defendant acknowledged knowing L but denied knowing H. Although defendant initially denied using cocaine, he eventually admitted to using the drug, and admitted that H had been in his vehicle when L had purchased the cocaine. Defendant denied taking L and H to his apartment.

During *voir dire*, the prosecutor engaged potential jurors in a discussion about their views regarding the prosecution calling only one witness to prove a fact. The prosecutor contrasted for the potential jurors a scenario that he asserted "was out of either Iran or Saudi Arabia" where an alleged rape victim was required to produce five male witnesses to prove the rape. One juror purported to correct the prosecutor, stating that the prosecutor was describing Sharia law, a religious law, not the legal system of a country.[2]

After the jury was sworn, and outside of the jury's presence, defense counsel requested a curative instruction regarding the prosecutor's comments on Sharia law. Defense counsel asserted that the prosecution's comments could bias the jury against defendant because defendant is Iranian and Muslim. The prosecutor stated that he had used that example when speaking with potential jurors in every sex abuse case he had tried in the past few years. Defense counsel requested that the jury be instructed not to use defendant's race, religion, or ethnicity against him in reaching a verdict, and that the prosecutor's reference to Sharia law was merely an illustration of the difference between legal systems. The

---

[2] The juror was a university student. The prosecutor used a peremptory challenge to remove the juror. In ruling on the defense challenge to the peremptory removal of the juror, the trial court noted, "[I]t was clear that [the juror] was of some type of Indian ethnicity—not American-Indian, but the [c]ountry of India." The prosecutor explained that he challenged the juror, "without regard to ethnicity or religious beliefs of the defendant," but because the juror's "lack of life experience, combined with his chosen field of study, say something about the views he is likely to hold."

court refused to give the proposed instruction, commenting that such an instruction was unnecessary as the jury did not know defendant's ethnicity or religion. According to the court, as far as the jury was concerned, defendant "could be an American," and "could be just as much a Christian as he is a Muslim."

A jury found defendant guilty of the unlawful distribution of a controlled substance to a minor, ORS 475.906; unlawful possession of cocaine, ORS 475.884; attempted sexual abuse in the second degree, ORS 163.425; sexual abuse in the third degree, ORS 163.415; and driving under the influence of intoxicants, ORS 813.010.[3]

As noted, defendant assigns error to the trial court's failure to provide a curative instruction to the jury in response to the prosecutor's comments about Sharia law. Defendant argues that he was deprived of his right to a fair trial when the prosecutor improperly focused the jurors' attention on inflammatory issues regarding the prosecution of the crime of rape in Iran or Saudi Arabia. According to defendant, the prosecutor's comments and related questions were not relevant to a determination of juror qualification, and could have been intended to elicit an inappropriate emotional response directed toward defendant based on his ancestry and religion. Because the trial court failed to provide the curative instruction requested by defendant, defendant contends that he is entitled to a new trial.

The state responds with two arguments: (1) the issue is not preserved because defendant did not object immediately during the prosecutor's comments, and (2) if the issue was preserved, the trial court did not abuse its discretion in refusing to provide a curative instruction. In our view, defendant's request for the curative instruction was timely. We therefore reject the state's preservation argument without further comment.

Turning to the merits, the issue before us is whether the prosecutor's comments and the discussion it evoked,

---

[3] Defendant was acquitted of Count 3, alleging attempted sexual abuse in the second degree.

regarding Sharia law so affected defendant's right to a fair trial that it warranted a curative instruction, and whether the trial court's failure to give such an instruction requires that we reverse defendant's convictions. As described above, the prosecutor engaged jurors in a discussion about a case "out of either Iran or Saudi Arabia" where a woman was required to provide five male witnesses to prove that she had been raped.[4] That led to a discussion on Sharia law, the religious law of Islam. Defendant argues that because defendant is of Iranian ancestry and a Muslim, the prosecutor's remarks could have prejudiced the jurors against defendant by appealing to racial, cultural, and religious biases of the jurors.

At the outset, we disagree with the trial court's implicit conclusion that the jury would not relate the comments about Sharia law with defendant's ancestry or religion. Defendant's first and last name were sufficient for a reasonable juror to identify him as a person of Middle Eastern ancestry and, by implication, possibly from Iran or Saudi Arabia (the countries mentioned by the prosecutor) and possibly of the Muslim faith. The contextual relationship between defendant's ancestry, the sex crimes for which defendant was charged, and the prosecutor's comments about the proof requirements in the prosecution of sex crimes in "either Iran or Saudi Arabia" invited the jurors to identify defendant with one of the countries mentioned by the prosecutor and with the dominant religion of those countries. Moreover, the example of Sharia law used by the prosecutor may have suggested to the potential jurors that men from countries that follow Sharia law feel free to commit sexual offenses, as long as the requisite number of witnesses are not present.

We turn now to the question of whether the prosecutor's conduct affected defendant's right to a fair trial. Our case law regarding what constitutes prosecutorial misconduct provides some guidance as to the boundaries of fairness in this context.

---

[4] Because the correct number of witnesses required under Sharia law is not necessary to our analysis of this appeal, we have not undertaken to verify the accuracy of the prosecutor's characterization.

Prosecutorial misconduct is generally defined as:

"[A]ny activity by the prosecutor which tends to divert the jury from making its determination of guilt or innocence by weighing the legally admitted evidence in the manner prescribed by law. It commonly involves an appeal to the jurors' prejudices, fears, or notions of popular sentiment by presenting to them inadmissible evidence; or urging them to make inferences not based on the evidence; or to disregard the evidence altogether and base their determination on wholly irrelevant factors."

*State v. James Edward Smith*, 4 Or App 261, 264, 478 P2d 417 (1970) (citation omitted).

We assume that the prosecutor's comments (which, as noted, the prosecutor indicated that he used regularly when trying sexual abuse cases) were not intended to "appeal to the jurors' prejudices, fears, or notions of popular sentiment." We also acknowledge that it is difficult for this court to gauge the prejudicial effect of the kind of prosecutorial conduct that occurred here. That said, we cannot overlook the fact that one likely effect of the prosecutor's comments was to call the jurors' attention to defendant's ancestry and entice the jurors to consider more than the evidence in arriving at a verdict—to also consider defendant's ancestry and religion—matters that many Americans view negatively. The premise underlying the constitutional right to "an impartial jury" guaranteed in Article I, section 11, of the Oregon Constitution is indifference by jurors to matters of race and religion. In the end, regardless of the prosecutor's motivation in making such comments, this court simply cannot tolerate conduct, blatant or subtle, that even borders on an attempt to introduce, at any stage of a trial, issues of racial, ethnic or religious bias.

We now turn to the question of whether the trial court erred in failing to give the curative instruction defendant proffered. In *State v. Lundbom*, 96 Or App 458, 461, 773 P2d 11 (1989), this court commented that, "[a]lthough control of counsels' arguments is within the discretion of the trial court, that discretion is not unbounded. If an objectionable remark, properly challenged, is likely to influence the

jury, the trial court's failure to correct it may be a ground for reversal." (Citations omitted). *See also State v. Seeger*, 4 Or App 336, 340, 479 P2d 240 (1971) (trial court's failure to take affirmative action, either by instruction or mistrial, for prosecutor's improper remarks was prejudicial even requiring new trial). Here, because one likely effect of the prosecutor's comments was to suggest to jurors that men from countries that follow Sharia law feel free to commit sexual offenses as long as the necessary number of male witnesses are not present, it was incumbent on the trial court to neutralize the likely effect of the prosecutor's comments and remind the jurors that appeals to social, ethnic, or religious bias could not substitute for reason and evidence. The trial court's failure to repair the harm likely caused by the prosecutor's comments by giving defendant's curative instruction was an abuse of discretion requiring that we reverse defendant's convictions and remand for a new trial.

Reversed and remanded on Counts 1, 2, 4, 5, and 6; otherwise affirmed.