Argued and submitted September 29, 2014, reversed and remanded
April 8, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SETH JARED LOGSTON,
*Defendant-Appellant.*

Jackson County Circuit Court
120791FE; A152767

347 P3d 352

David O. Ferry, Senior Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services. Seth Jared Logston filed the supplemental brief *pro se.*

Peenesh Shah, Assistant Attorney General, argued the cause for appellant. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Defendant appeals a judgment of conviction for two counts of first-degree sexual abuse, ORS 163.427, asserting that an improper closing argument by the prosecutor violated his right to a fair trial. The conviction rested largely on the complainant's testimony describing the abuse, with corroboration by other witnesses to whom she had reported it. At trial, three defense witnesses—relatives of defendant and the complainant—provided opinions that the complainant was untruthful and had a reputation in their family for untruthfulness. During rebuttal closing argument, the prosecutor stated that defendant had not given "one single good example of what exactly" a reputation for being a liar meant, urging jurors to disbelieve the defense witnesses regarding the complainant's lack of credibility. The trial court overruled defendant's objection. On appeal, defendant contends that the state's closing argument was improper because Oregon evidence rules precluded defendant from presenting specific instances of the complainant's untruthfulness. We reverse and remand, because the argument improperly focused the jury on a factual deficit that defendant was powerless to ameliorate and likely affected the verdict.[1]

The relevant facts are primarily procedural. The complainant was defendant's cousin and was approximately age 10 at the time of the alleged conduct. Defendant babysat the complainant and other young cousins during family gatherings. The complainant testified that defendant touched her vagina under her clothes on several occasions while defendant was babysitting. The state also called other witnesses to testify, including a school friend of the complainant, the complainant's mother, defendant's mother, and investigating officers.

Defendant testified and denied that he had sexually abused the complainant. Defendant also called three

---

[1] Defendant also asserts other assignments of error, including that the trial court erred by instructing the jury that it could reach a verdict based on a nonunanimous vote and by entering the judgment of conviction on the two counts of sexual abuse based on a nonunanimous verdict. Because of our disposition reversing and remanding for a new trial, we do not reach those or other assignments of error to rulings at trial.

relatives who testified that the complainant had a character trait of untruthfulness. Defendant's mother testified that, based on her contacts with the complainant, she had formed the opinion that the complainant was "not always truthful." Defense counsel asked her whether she was familiar with the complainant's reputation for honesty in her family. After the witness said yes, defense counsel asked, "[W]ithout describing anything specific, how are you familiar with her reputation?" Defendant's mother stated that the complainant's reputation for honesty within the family was that she was "[n]ot always truthful." Continuing his direct examination of defendant's mother, defense counsel asked a question moments later that appeared to allow her to describe a specific example of the complainant's dishonesty at a time when the witness was babysitting a number of children, including the complainant and her brother. The prosecutor objected and stated, "I don't know if this is going to get into specific character evidence." Defense counsel then appears to have clarified that he would not be asking for any kind of character evidence, and the court allowed the question. An older relative of the complainant and defendant also testified that she occasionally had had contact with the complainant by babysitting her or by going to family events. She testified that the complainant's character for truthfulness was "[n]ot very good," that the complainant "lies," and that the complainant's reputation within the family for honesty was that she was "[n]ot very honest." Defendant's sister testified that she was the regular babysitter for the complainant's younger brother and would also babysit the complainant and that, in her opinion, the complainant was "not a truthful child." Defendant's sister also testified to the complainant's reputation for truthfulness within the family, stating that she "is known to be an untruthful child."

During closing arguments, defense counsel argued, among other points, that the detective's interview of the complainant had been leading and improper; family members who observed the complainant's interactions with defendant testified that her demeanor had never changed around him and that she had not displayed any fear of him; and the jury had heard from family members who knew that the complainant was recognized in the family for being dishonest

and who also held personal opinions, based on their contacts with her, that she was dishonest. In rebuttal, the prosecutor argued, in part, that defendant's witnesses were biased in his favor:

> "And these people came in here today and it's understandable. This is a serious case for them, too. When you're evaluating witness testimony, it says you need to look at evidence concerning the biased motives and interests of the witness. All those witnesses that came in here today are family close to [defendant]. They have a bias. They have a motive. They have an interest. That's why they came here today and told you that in their opinion, that [the complainant] had a reputation for being a liar."

The prosecutor then made the following statement concerning their testimony: "They didn't really give you one single good example of what exactly that meant."

Defendant stated, "Objection, Judge." The state then continued, "That's an 11-year-old child." Defendant reiterated, "Objection. That is absolutely unpermitted by law." The trial court overruled the objection. The prosecutor then moved on in her argument to the nature of the events at which family members had observed the complainant around defendant.

Defendant did not thereafter request a mistrial or seek a curative instruction to address the state's closing argument. Defendant was convicted of two counts of first-degree sexual abuse by a nonunanimous jury. He now challenges the propriety of the state's closing argument.

We initially address the state's contention that, regardless of the merits of defendant's argument concerning improper closing argument, we are unable to vacate his convictions—the relief he seeks on appeal—for lack of preservation. First, the state contends that defendant failed to alert the trial court that he wanted a particular remedy beyond the sustaining of his objection. The state argues that, to challenge his convictions on appeal, defendant was required to object to the closing argument, which defendant did, *and* was required either to request a curative instruction or to move for a mistrial, neither of which defendant did. The state has not cited, and we have not found, an Oregon

Supreme Court case holding that, in addition to making a timely objection to improper closing argument, a criminal defendant whose objection has been overruled must also move for a curative instruction or a mistrial to preserve the issue for appeal.

Instead, both the state and defendant rely, in part, on *State v. Lundbom*, 96 Or App 458, 773 P2d 11, *rev den*, 308 Or 382 (1989). In that case, when the prosecutor referred to a defense expert witness and defense counsel as "pimps" in closing argument, defense counsel stated two objections, explaining to the court that the reference was an attack on the lawyer and not the facts of the case and "improperly distracts [the] jury from its function." *Id.* at 460-61. The trial court overruled the objection and told defense counsel that he could make an argument to that effect to the jury. *Id.* at 460. The defendant did not move for a curative instruction or a mistrial. *Id.* at 461. On appeal, we rejected the idea that, as a result, we should not consider the defendant's contention that he should get a new trial, noting that the court's "responses to his objections made it obvious that it was not disposed to grant either request." *Id.* at 462. We observed that, "[f]or all practical purposes," the trial court's action "foreclosed the possibility that defendant would obtain a curative instruction." *Id.* We concluded that, "[g]iven the circumstances," defense counsel had done "all that was required." *Id. Lundbom*, therefore, tends to favor defendant's position that he sufficiently preserved his argument on appeal.

The state also relies on *State v. Monsebroten*, 106 Or App 761, 809 P2d 1366, *rev den*, 311 Or 482 (1991). In that case, after observing that the defendant had objected to a comment by the prosecutor in rebuttal argument but had not moved for a mistrial, we addressed the propriety of the closing argument on its merits. But in doing so, we stated, "*Even if defendant properly preserved the alleged error*, the trial court has discretion in its control of counsels' arguments and the determination of the need to declare a mistrial." *Id.* at 766 (emphasis added). According to the state, *Monsebroten* suggests that error is not preserved in Oregon when a defendant unsuccessfully objects to a prosecutor's closing argument but fails to request a mistrial.

As the state recognizes, though, we have never held that a defendant whose objection to the prosecutor's argument has been overruled must also move for a mistrial to preserve the issue for appeal. And, *Monsebroten* is not to the contrary. In accordance with our holding and reasoning in *Lundbom*, we conclude that a defendant who immediately objects to the prosecutor's argument, but whose objection is overruled, need not engage in futile efforts to obtain a curative instruction or a mistrial on grounds that the trial court has already determined to lack merit. *See also State v. Worth*, 231 Or App 69, 77, 218 P3d 166 (2009), *rev den*, 347 Or 718 (2010) (after the trial court overruled the defendant's objections to the prosecutor's statements during closing argument, the trial court did not give a curative instruction, and none was requested, because "the court did not perceive any error or prejudice to remedy"). In this case, because the trial court overruled defendant's objection to the prosecutor's statement, defendant was not required to move for a curative instruction or a mistrial as a prerequisite to challenging the propriety of the state's closing argument on appeal.

In a second preservation argument, the state contends that defendant's objection at trial was not sufficiently specific. In the state's view, the trial court could have understood defendant's objection to be either that the prosecutor's argument concerning the complainant's credibility was not permitted by law or that defendant was indicating that any effort by the defense to provide examples of the complainant's untruthfulness would not have been permitted by law. The state acknowledges that the latter understanding reflects defendant's position on appeal. However, if the former were true, the state argues, then defendant failed to put the trial court on notice of his current position on appeal.

We agree with defendant that either of the state's interpretations of his objection at trial is, in actuality, what he is arguing on appeal. As defendant explains, his position on appeal is that "the state's *argument* was unpermitted *because* the law does not permit the defendant to do what the state faulted him for failing to do." (Emphasis in original.)

We also conclude that, given the focus of the court and the parties on the proper introduction of the opinion

and reputation evidence—without specific examples of dishonesty—through the three defense witnesses, who testified on the day of closing arguments, defendant's objection was sufficient to give the court the opportunity to rule correctly. For example, during the direct examination of defendant's mother, defense counsel asked her whether she was familiar with the complainant's reputation for honesty in her family. After the witness said yes, defense counsel asked, "*[W]ithout describing anything specific,* how are you familiar with her reputation?" (Emphasis added.) When it appeared moments later that a question by defense counsel might permit defendant's mother to describe a specific example of the complainant's dishonesty when the witness was babysitting the complainant, the prosecutor objected and explained, "I don't know if this is going to get into specific character evidence." Defense counsel appears to have clarified that he would not be asking the witness to relate any kind of character evidence, and the court allowed him to re-ask his question. Furthermore, defendant's objection immediately followed the prosecutor's reference to the witnesses' failure to provide specific examples of the complainant's dishonesty. In light of that context, we conclude that, when defendant protested, "[t]hat is absolutely unpermitted by law," the state and the trial court had "enough information to be able to understand the contention and fairly respond to it." *State v. Walker,* 350 Or 540, 552, 258 P3d 1228 (2011); *State v. Blasingame,* 267 Or App 686, 690, 341 P3d 182 (2014).

Accordingly, we turn to the merits. "Although control of counsels' arguments is within the discretion of the trial court, that discretion is not unbounded." *Lundbom,* 96 Or App at 461. "We must reverse when it is clear that an argument was improper, properly challenged and likely to prejudice the jury unfairly." *State v. Rosenbohm,* 237 Or App 646, 649, 241 P3d 344 (2010); *State v. Bolt,* 108 Or App 746, 749, 817 P2d 1322 (1991).[2]

---

[2] Defendant also argues that his right to a fundamentally fair trial guaranteed by the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution was violated. Because we resolve the appeal on state law grounds, *State v. Kennedy,* 295 Or 260, 262, 666 P2d 1316 (1983) (Oregon appellate courts consider questions of state law before reaching federal constitutional claims), we do not reach defendant's federal constitutional argument.

Defendant argues that the prosecutor improperly asked the jury to draw an inference of guilt that was not supported by the logical force of the evidence in the record. Specifically, he argues that the prosecutor urged the jury to reject the testimony of the three defense witnesses who testified about the complainant's untruthfulness on the basis that "defendant was *unable* to produce 'one single good example' of her untruthfulness." (Emphasis in original.) He further argues that he was precluded under the rules of evidence, OEC 405 and OEC 608, from providing specific examples of the complainant's dishonesty. Therefore, he concludes, for the prosecutor to call the jury's attention to his witnesses' failure to provide those examples was to unfairly focus the jury on an irrelevancy.

The state asserts that the trial court correctly overruled defendant's objection to its closing argument, for two reasons. First, the state contends that, because defendant had a right under the confrontation clause of Article I, section 11, of the Oregon Constitution to cross-examine the complainant regarding prior false accusations, regardless of OEC 608, citing *State v. LeClair*, 83 Or App 121, 730 P2d 609 (1986), *rev den*, 303 Or 74 (1987), the state was permitted to invite "the jury to draw a reasonable inference from his failure to do so." We reject that argument, because the complainant in this case had not recanted a prior accusation, and we did not broadly hold in *LeClair* that a defendant may introduce any sort of specific examples of a complainant's dishonesty to support admissible testimony regarding the complainant's reputation for untruthfulness.

Second, the state contends that it properly commented on the "specific details" that the defense witnesses gave "supporting that reputation testimony," a topic that both parties had explored at trial. According to the state, the prosecutor was merely referring to the fact that, although defendant's mother testified that the complainant's own mother had disclosed that the complainant was manipulating and lying to her family, the complainant's mother denied ever voicing such complaints about her daughter. Thus, the state addresses the merits of defendant's principal argument by disputing that, in fact, the prosecutor had commented on

the defense witnesses' failure to provide specific examples of the complainant's untruthfulness.

We cannot accept that the jury would have understood the prosecutor's argument as the state now sees it, because of the technical evidentiary lens that the state employs to do so. Revisiting the argument, the prosecutor told the jury about the biases of the witnesses who had testified to the complainant's "reputation for being a liar" when she added, "They didn't really give you one single good example of what exactly that meant." Thus, the prosecutor referred to the lack of specific examples to illustrate the witnesses' testimony that the complainant had a reputation as a liar, that is, examples showing that the complainant had lied—not other kinds of examples that would help to establish a proper foundation for the witnesses' knowledge of the complainant's reputation.

We also agree with defendant that he was unable to provide specific examples of the complainant's dishonesty under OEC 405(1) and OEC 608. Defendant notes that he introduced evidence of the complainant's character for truthfulness through direct examination of his witnesses, as permitted by OEC 405(1).[3] That rule governs the form of admissible character trait evidence:

> "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct."

OEC 405(1). A party may not provide evidence of specific instances of conduct to establish the character trait. *State v. Enakiev*, 175 Or App 589, 594, 29 P3d 1160 (2001). In a challenge to the credibility of a witness, OEC 608 provides:

> "(1) The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but:

---

[3] *See also* OEC 404(2) (character evidence "is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except: * * * (b) Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same * * *; (c) Evidence of the character of a witness as provided in [OEC 608]").

"(a)   The evidence may refer only to character for truthfulness or untruthfulness; * * *

"* * * * *

"(2)   Specific instances of the conduct of a witness, for the purpose of attacking or supporting the credibility of the witness, other than conviction of crime as provided in [OEC 609], may not be proved by extrinsic evidence. Further, such specific instances of conduct may not, even if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness."

Defendant's witnesses provided both "testimony as to reputation" and "testimony in the form of an opinion." They did not provide specific instances of the complainant's dishonesty and were not permitted to do so.

Thus, as defendant argues, part of the prosecutor's rebuttal argument—that the jury should at least in part make its credibility determination and, consequently, arrive at its verdict based on the failure of defense witnesses to describe examples of the complainant's untruthfulness—rested on a specious premise, namely, that defendant was capable of offering, through the witnesses who testified, examples of specific instances of the complainant's dishonesty. In doing so, the prosecutor invited the jury to speculate that, had the defense witnesses actually known of examples when the complainant had lied, they would have said so at trial, and to discount their testimony.

We recently recognized in *State v. Spieler*, 269 Or App 623, 641, 346 P3d 549 (2015) that some trial settings, such as a defendant's assertion of an affirmative defense, may properly give rise to the prosecutor's comment on the defendant's failure to meet a burden of production or persuasion, but that there are limits on "the circumstances in which a prosecutor can comment on the defendant's failure to present or contradict evidence." This case presents one such limit. We hold that, when a defendant is prohibited from presenting an item of evidence as a matter of law, the prosecutor cannot comment on the defendant's failure to present that evidence to bolster the state's case. In this case, not only was defendant barred from presenting specific examples of the complainant's dishonesty, but the prosecutor

objected when she believed defendant might attempt to elicit such examples from a defense witness. Accordingly, we conclude that the trial court in this case erred by overruling defendant's objection to such an argument by the state.

Under *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003), we must affirm despite error if there is "little likelihood that the particular error affected the verdict[.]" Defendant argues that, in a case without third-party eyewitnesses and without physical evidence of abuse, the prosecutor's rebuttal argument was unfairly prejudicial and likely affected the verdict because it served to bolster the complainant's credibility in a case in which credibility was key, other children were present when the alleged sexual misconduct occurred, defendant made no admissions, and the jury was not unanimous (two jurors would have acquitted defendant on Count 1 and one juror would have done so on Count 2). Although the state notes that, after defendant objected, the state did not continue its argument concerning the specificity of defendant's evidence of the complainant's character or reputation for untruthfulness, in light of the central role of the complainant's credibility in this case, we cannot conclude that there is "little likelihood" that the rebuttal argument, which defendant had no opportunity to ameliorate, affected the jury's verdict. We therefore reverse and remand for a new trial.[4]

Reversed and remanded.

---

[4] Because we conclude that defendant was denied a fair trial, we decline the state's invitation to remand for the limited purpose of allowing the trial court to determine whether, had it deemed the prosecutor's argument to be improper, it would have taken any remedial action, such as granting a mistrial.