Argued and submitted March 16, 2016, reversed and remanded August 2, 2017

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**DOUG WILLIAM BRUNNEMER,**
*Defendant-Appellant.*

Klamath County Circuit Court
1200350CR, 1200341CR;
A156658 (Control), A156663

401 P3d 1226

Laura A. Frikert, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Susan G. Howe, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Garrett, Presiding Judge, and Lagesen, Judge, and Duncan, Judge pro tempore.*

---

* Garrett, P. J., *vice* Flynn, J. pro tempore; Lagesen, J., *vice* Haselton, S. J.

**GARRETT, P. J.**

Defendant appeals judgments of conviction for multiple domestic-violence offenses. He assigns error to the trial court's failure to sustain defense objections or grant a mistrial in response to the state's closing argument, in which the prosecutor made comments critical of defense counsel and asserted that the defense was "not asking for justice." We conclude that the prosecutor's statements crossed the boundary of permissible argument and prejudiced defendant's right to a fair trial. Accordingly, we conclude that the trial court abused its discretion, and we reverse and remand the judgments.[1]

The relevant facts are procedural and undisputed. The convictions underlying this appeal arose from two criminal cases against defendant. In the first case, defendant was charged with one count of felony fourth-degree assault, ORS 163.160(3), and one count of strangulation, ORS 163.187. In the second case, defendant was charged with second-degree kidnapping, ORS 163.225; two counts of first-degree burglary, ORS 164.225; unlawful use of a weapon, ORS 166.220(1)(a); three counts of felony fourth-degree assault, ORS 163.160(3); two counts of strangulation, ORS 163.187; and menacing, ORS 163.190. The two indictments alleged that all of the counts for assault, strangulation, and menacing were offenses constituting domestic violence. ORS 132.586(2).

The cases were consolidated and tried to a jury. The state's case was based largely on the testimony of defendant's then-wife, C, along with testimony from police officers who had spoken with C and observed her injuries.

During cross-examination, defense counsel highlighted incongruities in C's testimony and questioned C about contradictions between her trial testimony and her earlier statements to police. In the course of the cross-examination, the trial court prohibited defense counsel from using the word "supposedly" to refer to the events at issue on the ground that the word was argumentative, although the

---

[1] In light of our disposition, we do not reach defendant's other assignments of error.

court allowed defense counsel to use the term "allegedly." The court ruled that both words would be allowed during closing argument.

In closing argument, defense counsel again emphasized the inconsistencies and incongruities in C's description of events. Consistent with the trial court's earlier ruling, defense counsel used the term "supposedly" multiple times during closing argument to describe the allegations. She also emphasized that defendant had no obligation to put on evidence to dispute C's version of the events, stating that "the burden is not on [defendant]."

During the state's rebuttal argument, the prosecutor made several comments that are the subject of this appeal. The prosecutor asserted that defense counsel "says that this victim can't be believed because basically her story doesn't make sense," arguing that "that's what happens to these victims, they get pummeled so often that it all runs together and then defense attorneys come into Court and say don't believe them, they're dishonest, they're making it up." The prosecutor stated that C had "to come into this courtroom [to] basically be mocked," characterizing the defense as portraying C as a "moron," "mistaken," and "confused." The prosecutor proceeded as follows:

"[C] is uncontradicted in her testimony. Uncontradicted. Meaning that she's the one that told you what happened during these assaults, she's the one who told you how her pain was, she was the one who told you what her injuries were, and there was no evidence to contradict what she said he did. Did she have any inconsistencies? Yes, she did. *** She did her very best to do everything that she could to tell you what happened to her.

"We told you that this case was about power, rage and control, and we've seen that over and over again in everything that happened to her. And the defense, what have they told you?"

At that point, defense counsel objected, arguing that the prosecutor had impermissibly "shift[ed] the burden." The court disagreed, and the prosecutor continued:

"What this attorney has done during the course of this trial is use the words 'allegedly' and 'supposedly.' We've

heard her for two days now. 'Allegedly' and 'supposedly.' The acts allegedly happened, it supposedly happened, she gets up here and makes those statements. You know who can take those words away from her? You guys. You can take those words away from her. There's no 'alleged' about this; there is no 'supposed' about this. This victim was beat to a pulp on at least three occasions, on at least three that we're talking about.

"And the thing about this case that is just amazing is that the defense believes that you're not going to find the victim credible and that you're going to let him walk. They're here today, they're not asking for justice, they're asking for—"

Defense counsel then moved for a mistrial. The trial court permitted the prosecution to conclude its rebuttal and excused the jury before hearing argument on defendant's motion.

Defense counsel argued that the prosecutor had shifted the burden of persuasion, had "personally attack[ed]" and mischaracterized the constitutional role of defense counsel, and had inappropriately commented on defendant's right to remain silent. The court expressed concern about the prosecutor's "justice" comment and described the prosecutor's comment as being "close to some lines of civility," but denied the motion for mistrial.

The trial court provided standard jury instructions that the jury should not regard attorneys' arguments as evidence and that the jury should decide the case without "bias, sympathy or prejudice," but the court gave no instruction specifically regarding the prosecutor's "justice" comment or any other statement that was made during rebuttal. The jury acquitted defendant on the burglary counts, failed to reach a verdict on the kidnapping and unlawful use of a weapon counts, and convicted defendant on the remaining eight counts, with a nonunanimous guilty verdict on one of those counts.

On appeal, defendant renews his argument that his right to a fair trial was compromised by the prosecutor's statements during rebuttal, and that the trial court should have, at a minimum, sustained defendant's objection to the

prosecutor's statement that defense counsel was "not asking for justice." We agree.

Control of counsel's argument is within the trial court's discretion, but "'that discretion is not unbounded.'" *State v. Farokhrany*, 259 Or App 132, 137, 312 P3d 584 (2013) (quoting *State v. Lundbom*, 96 Or App 458, 461, 773 P2d 11, *rev den*, 308 Or 382 (1989)). A trial court abuses its discretion when it overrules a defendant's objection to a prosecutor's improper argument if the argument is "likely to prejudice the jury unfairly," and the trial court does not take action sufficient to cure the prejudice. *State v. Logston*, 270 Or App 296, 303, 347 P3d 352 (2015) (quoting *State v. Bolt*, 108 Or App 746, 749, 817 P2d 1322 (1991)); *cf. State v. Worth*, 231 Or App 69, 79, 218 P3d 166 (2009), *rev den*, 347 Or 718 (2010) (finding an abuse of discretion where the trial court "erred in overruling defendant's objections to the pros-ecutor's misstatements in closing about the presumption of innocence, the court failed to recognize that it had erred, and the court did not sufficiently correct the error").

Here, defendant argues that the prosecutor's com-ments were improper in that they criticized defendant's counsel for merely holding the state to its burden, question-ing C's credibility, and alluding to the presumption of defen-dant's innocence. In defendant's view, the prosecutor's argu-ment improperly suggested that defense counsel had further victimized C and that defense counsel's efforts were not in furtherance of justice. In response, the state argues that the prosecutor was merely criticizing the defense counsel's clos-ing argument and not defense counsel personally, and that, even if the prosecutor's "justice" comment was improper, the statement was "isolated" and unlikely to prejudice the jury.

When a prosecutor attempts to influence the jury by making "unwarranted personal attacks" on defense counsel, that conduct is "not only unfair, but it impugns the integ-rity of the system as a whole" because such conduct "danger-ously overshadow[s] what a defendant's case is really about." *Lundbom*, 96 Or App at 461-62. Our case law defines prose-cutorial misconduct as

> "any activity by the prosecutor which tends to divert the jury from making its determination of guilt or innocence

by weighing the legally admitted evidence in the manner prescribed by law. It commonly involves an appeal to the jurors' prejudices, fears, or notions of popular sentiment by presenting to them inadmissible evidence; or urging them to make inferences not based on the evidence; or to disregard the evidence altogether and base their determination on wholly irrelevant factors."

*State v. James Edward Smith,* 4 Or App 261, 264, 478 P2d 417 (1970) (citation omitted). Here, viewing the prosecutor's statement that the defense was "not asking for justice" within the context of the state's entire rebuttal argument, we conclude that the prosecutor improperly urged the jury to find defendant guilty based, not exclusively on the strength of the state's evidence, but on a desire to punish defense counsel for C's treatment at trial.[2]

Throughout rebuttal, the prosecutor conveyed to the jury that defense counsel had somehow acted improperly by attempting to undermine C's credibility. At one point, the prosecutor criticized "defense attorneys" for challenging complainants' testimony at trial. ("[T]hat's what happens to these victims, they get pummeled so often that it all runs together and then *defense attorneys* come into Court and say don't believe them, they're dishonest, they're making it up." (Emphasis added.)). Following that statement, the prosecutor suggested that defense counsel had "mocked" C and had portrayed C as a "moron." Then, despite the trial court's earlier rulings to the contrary, the prosecutor implied that defense counsel's use of the terms "allegedly" and "supposedly" was somehow improper, asking the jury to "take those words away from *her*"—referring specifically to defense counsel. (Emphasis added.) Some of the prosecutor's statements were properly directed at defendant's theory of the

---

[2] The state argues that we must consider the prosecutor's statement that defense counsel was "not asking for justice" in isolation because defendant did not object to the prosecutor's earlier statements as personal attacks on defense counsel. We disagree. The prosecutor's earlier statements provide context for determining what message the prosecutor in fact conveyed to the jury; therefore, we consider the prosecutor's rebuttal in its entirety. *Cf. State v. Werder,* 112 Or App 179, 183-84, 828 P2d 474 (1992) (concluding that the prosecutor's statement that "the defense in this case has absolutely no integrity whatsoever" was not improper because the context made clear that the prosecutor was referring to "an inconsistency in the arguments advanced by the defense and was not an attack on the integrity of defense counsel himself").

case—*i.e.*, those statements that attempted to explain why a domestic-violence victim may provide inconsistent accounts of particular instances of abuse. Nevertheless, when the state's rebuttal culminated in the prosecutor's statement that defense counsel was "not asking for justice," the prosecutor, whether inadvertently or not, invited the jury to find defendant guilty in part to punish defense counsel. *Cf. Lundbom*, 96 Or App at 461 (reversing conviction based on prosecutor's attack on defense counsel's integrity that "could only have been calculated to elicit an emotional response from the jury"). That invitation created a risk that the jury would be motivated to find defendant guilty not because the state had proven every element of the charged offenses beyond a reasonable doubt, but based on animosity toward "defense attorneys" who "mock[]" domestic-violence victims who choose to testify against their abusers. *See Farokhrany*, 259 Or App at 137 (a prosecutor engages in misconduct when she appeals to "'the jurors' prejudices, fears, or notions of popular sentiment by presenting to them inadmissible evidence'" or when she urges the jury "'to disregard the evidence altogether and base their determination on wholly irrelevant factors'" (quoting *Smith*, 4 Or App at 264)). The argument was improper, and the trial court should not have allowed it.

We turn to whether there is "'little likelihood that the particular error affected the verdict.'" *See Logston*, 270 Or App at 307 (quoting *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003)) (applying harmless-error standard after concluding that the trial court erred in overruling the defendant's objection to the prosecutor's improper argument).

As discussed above, the prosecutor's statements improperly attacked defense counsel for testing C's account of the events. The trial court's subsequent failure to take ameliorative action then effectively gave the prosecutor's comments an unjustified air of validity. *See Worth*, 231 Or App at 79 (observing that, when the trial court overruled the defendant's objection, it "gave the jury reason to think that the prosecutor's statement was, in fact, a correct statement of the law"); *Maney v. Angelozzi*, 285 Or App 596, 616, 397 P3d 567 (2017) (reasoning that, by "potentially discrediting [defense] counsel," the trial court "may well have

closed [the jurors'] minds to counsel's argument"); *State v. Seeger*, 4 Or App 336, 339, 479 P2d 240 (1971) (reasoning that the court's failure to recognize the prosecutor's comment as improper "was tantamount to judicial approval of the statement"). The state's case turned in large part on C's credibility, and, despite the prosecutor's improper comments, the jury acquitted defendant on two counts, could not reach a verdict on two counts, and failed to reach unanimity on one other count. *See Logston*, 270 Or App at 307 (taking into account the fact that the jury was not unanimous in analyzing whether the error was harmless). Under those circumstances, we cannot conclude that the error was harmless. *See id.* (reasoning that, "in light of the central role of the complainant's credibility," and the fact that the prosecutor's improper argument related to the defendant's efforts to undermine that credibility, the error was not harmless); *Seeger*, 4 Or App at 339-40 (the prosecutor's comment that the defendant was going to "make up a story" was prejudicial because, had "the jury believed the defendant and his witnesses, the state's case would have failed").

Reversed and remanded.