Argued and submitted December 12, 1991, remanded for entry of judgment of conviction for assault and for resentencing; otherwise affirmed March 25, 1992

# STATE OF OREGON,
## *Respondent,*

*v.*

# FRANK WAYNE WERDER,
## *Appellant.*

## (901994; CA A68330)

828 P2d 474

Guy B. Greco, Newport, argued the cause and filed the brief for appellant.

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Defendant appeals his conviction for assault in the second degree. ORS 163.175(1)(b). The issues are (1) whether a tennis shoe can constitute a "dangerous weapon" and (2) whether the trial court should have declared a mistrial due to the prosecutor's remarks during closing arguments.

On May 12, 1990, defendant went to the residence of his estranged wife, and they began arguing. Defendant ran upstairs to his wife's bedroom, where he encountered a man in bed. Defendant repeatedly kicked and punched the man, placed him in a headlock, apparently carried him downstairs and then continued the assault for several minutes outside the residence.

■■ The indictment alleged that defendant had committed second degree assault by causing "physical injury [to the victim] by means of a dangerous weapon, to wit: a shoe." Defendant argues that there was insufficient evidence from which the jury could infer that the tennis shoes that he wore were a dangerous weapon, as defined by ORS 161.015(1):

" 'Dangerous weapon' means any instrument, article or substance which under the circumstances in which it is used * * * is readily capable of causing death or serious physical injury."

Similar issues have been raised in other cases. In *State v. Bell*, 96 Or App 74, 78, 771 P2d 305, *rev den* 308 Or 142 (1989), we held that cowboy boots could be a dangerous weapon when used to kick a victim lying on the ground.[1] In *State v. Reed*, 101 Or App 277, 790 P2d 551, *rev den* 310 Or 195 (1990), a concrete sidewalk was held to be a dangerous weapon when the defendant had repeatedly struck the victim's head against it. In *Reed*, we noted that any article, "no matter how harmless it may appear when used for its customary purposes, becomes a dangerous weapon *when used in a manner that renders it capable of causing serious physical injury.*" 101 Or App at 279. (Emphasis supplied.) *See also State v. Hill*, 298 Or 270, 273, 692 P2d 100 (1984). The inquiry is not whether an injury *did* result, but whether it

---

[1] In *dicta*, we noted that "cowboy boots with pointed toes and three inch heels are capable of causing injuries that bare feet or, say, tennis shoes, are not." 96 Or App at 77.

*could have* resulted, given the manner in which the item was used. *State v. Allen*, 108 Or App 402, 406, 816 P2d 639 (1991). Accordingly, the state was required to prove beyond a reasonable doubt that ordinarily harmless footwear was used in a way that rendered it capable of causing "serious physical injury." ORS 161.015(1).

■       We agree with defendant that there was insufficient evidence from which the jury could determine that the shoes were readily capable of causing serious physical injury, given the manner in which they were used. As defense counsel argued at trial:

> "There is no tennis shoe * * * in evidence. There is no photograph of a tennis shoe in evidence. There is no description of a tennis shoe in evidence. There is no medical evidence that says that injuries that [the victim] suffered were caused by a tennis shoe."

No witness testified that defendant's aggressive use of his tennis shoed feet could have result in an injury that differed in any way from that which would be inflicted by his unclad feet. In sum, there was no showing of how a shoe was a dangerous weapon.

■ ■       Defendant's motion should have been granted, and the jury should have been instructed to consider only the lesser degree of assault that does not involve the use of a dangerous weapon. Because the jury's verdict of guilty includes a finding of guilt on each of the elements of the lesser included offense of fourth degree assault, we remand for entry of a judgment of conviction for that offense and for resentencing.[2] *State v. Wier*, 22 Or App 549, 554, 540 P2d 394 (1975).

■       Defendant also assigns error to the trial court's denial of his motion for a mistrial. He contends that the

---

[2] Defendant was indicted for violating ORS 163.175(1)(b), which provides that a person "commits the crime of assault in the second degree if the person: Intentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon." On the facts of this case, assault in the third degree would not be the lesser included offense, because its relevant provisions require either the use of a weapon or the infliction of *"serious* physical injury." ORS 163.165(1)(a), (b), (c). (Emphasis supplied.) In light of the fact that defendant was indicted for causing "physical injury" that was not "serious," the lesser included offense is assault in the *fourth* degree: "Intentionally, knowingly or recklessly caus[ing] physical injury to another." ORS 163.160(1)(a).

prosecutor's comments accused defense counsel of a lack of integrity in his presentation of the case. The prosecutor said:

"This certainly is no affront to [defense counsel]. He's a fine defense attorney, but I would submit to you that the defense in this case has absolutely no integrity whatsoever."

Defendant objected. The trial court allowed the prosecutor to continue "for just a moment to find out the context in which that remark is made. It could be a personal remark or it could have to do with an assessment of the evidence. I don't know." The prosecutor continued:

"The reason I say that, ladies and gentlemen, is because the testimony from the defense witnesses has been * * * that the defendant did not enter the apartment. Now, that would require you to find that at least four of the State's witnesses were completely untruthful because four of the State's witnesses put the defendant inside the apartment. Okay?"

At that point, defendant renewed his objection, which was overruled. The trial court observed that the word "integrity" had "many different definitions, one of which might be honesty, the other might be trustworthiness. It might be veracity." The prosecutor continued:

"Why would the defendant suggest, as [defense counsel] has in his closing argument, that you might consider whether or not the defendant committed a lesser-included offense of Criminal Trespass if the defendant did not enter the apartment? In fact, why would he ask you to consider self-defense if the testimony has been that he did not enter the apartment? * * * If he didn't enter the apartment, why go into that? *And that's the point I'm making when I say the theory of the defense here doesn't have any integrity because it's asking you to buy into all these arguments that are inherently contradictory*." (Emphasis supplied.)

In *State v. Lundbom*, 96 Or App 458, 773 P2d 11, *rev den* 308 Or 382 (1989), we held that a trial court committed reversible error by failing to give at least a curative instruction when the prosecutor, in closing argument, referred to the defense counsel and his expert witness as "pimps." Although we do not condone the prosecutor's choice of the word "integrity" in this case, the remainder of the argument showed that that word was used to describe an inconsistency in the arguments advanced by the defense and was not an attack on the

integrity of defense counsel himself. Accordingly, we cannot say that the trial court abused its discretion in denying defendant's motion for mistrial.

Remanded for entry of judgment of conviction for assault in the fourth degree, ORS 163.160(1)(a), and for resentencing; otherwise affirmed.