Submitted December 3, 2021, affirmed January 5, petition for review denied May 5, 2022 (369 Or 705)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DAVID MICHAEL BROWN,
*Defendant-Appellant.*

Multnomah County Circuit Court
17CR74637; A173208

502 P3d 1199

Gregory F. Silver, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Marc Brown, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the brief for respondent.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Kistler, Senior Judge.

PER CURIAM

Affirmed.

## PER CURIAM

Defendant appeals after he was found guilty in a bench trial of second-degree assault on the theory that he aided and abetted his codefendant in causing serious physical injury to the victim "by means of a dangerous weapon, to wit, a shoe." *See* ORS 161.015(1) (defining "dangerous weapon" to mean "any weapon, device, instrument, material or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury"). Relying on our decision in *State v. Werder*, 112 Or App 179, 182, 828 P2d 474 (1992), defendant argues that "the state was required to prove beyond a reasonable doubt that ordinarily harmless footwear was used in a way that rendered it capable of causing 'serious physical injury.'" And, according to defendant, the record is legally insufficient to support a finding that his codefendant's shoe was used in such a way, let alone to support a finding that defendant knew the shoe was a dangerous weapon and intended for his codefendant to use the shoe to seriously injure the victim. We disagree with defendant, conclude that the state presented sufficient evidence for the trial court to make those findings, and therefore affirm.

In reviewing defendant's preserved challenge to the sufficiency of the evidence to support his conviction, we view the evidence in the light most favorable to the state to determine whether a rational trier of fact, making reasonable inferences, could find the essential elements of the crime beyond a reasonable doubt. *State v. Hedgpeth*, 365 Or 724, 730, 452 P3d 948 (2019); *State v. Gonzalez-Valenzuela*, 358 Or 451, 454 n 1, 365 P3d 116 (2015) (agreeing "with the long-standing case law from the Court of Appeals that, under the circumstances [of a bench trial], defendant's closing argument was the equivalent of a motion for judgment of acquittal and, therefore, preserved the issue that defendant presents").

A detailed recitation of the facts would not benefit the bench, bar, or public. In short, the state presented evidence that defendant and another assailant were holding the victim down during an assault in which his codefendant

stomped more than once on the victim's head; that the shoe (which was introduced into evidence) had a flat, broad sole made of hard rubber, with a "pretty firm edged sole"; that the autopsy of the victim, who had been fatally shot during the assault, revealed patterns on the left cheek, eye, and right side of the forehead that were consistent with being caused by the tread from a shoe; that multiple stomps was "the most likely mechanism" of injury; and that people stomp with greater force and more confidently when wearing shoes as compared to bare feet. The record also included testimony from defendant's expert, a biomechanical engineer, who testified that a "bare foot would also cause sufficient forces to cause injury and possible death," and "that the forces generated during a stomp are independent of shoe wear, gender, and fitness of the stomper." However, defendant's expert declined to opine on the mentality of having a shoe on and whether a person might stomp harder when wearing a shoe.

Based on the evidence of the nature of the shoe, the intensity of the stomping, and defendant's role in the assault, a reasonable trier of fact could infer not only that his codefendant's shoe was capable of causing serious physical injury when used to stomp the victim's head, but also that defendant knew that and intended that very use of the shoe as part of the assault. As a witness testified, and the trial court noted, there is a common sense aspect to the role that a shoe can play when stomping: If there is a pile of glass on the ground, a person with a shoe is more confident and can strike harder because of the protection and surface it provides in comparison to a bare foot. Thus, we agree with the trial court's rationale:

> "Under the circumstances in which it was used in this case, to repeatedly stomp on someone's face while their head is down on the ground, the shoe was readily capable of causing serious physical injury. That injury * * * is qualitatively different than an injury which would be caused by stomping on someone's face in bare feet."

The evidence of the use for stomping and about the nature of the shoe in this case make it readily distinguishable from *Werder*, as the trial court correctly recognized.

In *Werder*, we explained that the state had presented *no* evidence about the shoe or the way in which the shoe was used to kick the victim: There was "no tennis shoe *** in evidence," "no photograph of a tennis shoe in evidence," "no description of a tennis shoe in evidence," "no medical evidence that says that injuries that [the victim] suffered were caused by a tennis shoe," and "[n]o witness testified that defendant's aggressive use of his tennis shoed feet could have resulted in an injury that differed in any way from that which would be inflicted by his unclad feet." 112 Or App at 182 (internal quotation marks omitted). Here, the record is nearly the exact opposite. The shoe and descriptions of the shoe were in evidence; there was medical evidence tying the injuries to the use of the shoe; and there was evidence about the intensity of the stomping and, generally, how stomping in shoes is different from stomping in bare feet.

On this record, the trial court did not err in concluding that the evidence was sufficient to find that the shoe was a dangerous weapon, that defendant knew that, and that defendant intended his codefendant to use the shoe in that way as defendant and another assailant took turns holding the victim down. *See State v. Bell*, 96 Or App 74, 78, 771 P2d 305, *rev den*, 308 Or 142 (1989) ("Although cowboy boots are not dangerous weapons *per se*, defendant converted them into dangerous weapons within the meaning of ORS 161.015(1) when he used them to kick a resisting robbery victim in the upper body while she was lying on the ground.").

Affirmed.