360　　　　　　　　　　June 18, 2025　　　　　　　　No. 548

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NATHANIEL FOREST LaFLAMME,
*Defendant-Appellant.*

Marion County Circuit Court
22CR29404; A180399

Tracy A. Prall, Judge.

Submitted November 25, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Shawn Wiley, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, E. Nani Apo, Assistant Attorney General, and Lani Augustine, Certified Law Student, filed the brief for respondent.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.*

LAGESEN, C. J.

Affirmed.

_____

* Lagesen, Chief Judge *vice* Mooney, Senior Judge.

**LAGESEN, C. J.**

Defendant appeals a judgment of conviction for, among other things, one count of second-degree assault, in violation ORS 163.175. The state charged that defendant committed that offense by "knowingly caus[ing] physical injury to [the victim] by means of a dangerous weapon, to-wit: a boot." On appeal, defendant raises two unpreserved assignments of error, contending that the trial court erred by (1) failing to acquit him of second-degree assault on its own motion on the ground that the evidence was insufficient to show that his footwear was a dangerous weapon; and (2) failing to instruct the jury that it had to find that defendant knew that his footwear had the characteristics of a dangerous weapon. Because those assigned errors are unpreserved, defendant requests that we review for plain error and exercise our discretion to correct those ostensible plain errors. We affirm.

An unpreserved assignment of error is subject to review and potential correction pursuant to plain-error review if the alleged error is "obvious and not reasonably in dispute." *State v. Perez*, 373 Or 591, 604, ___ P3d ___ (2025).

We start by assessing defendant's first contention, that the trial court plainly erred by failing to determine, on its own motion, that the evidence was insufficient to support a finding that defendant's shoe was a dangerous weapon. To prove that defendant's boot was a "dangerous weapon," the state had to present evidence that under the circumstances in which defendant's boot was used (stomping on the victim's eye after pushing her to the ground), defendant's footwear was "readily capable of causing death or serious physical injury." ORS 161.015(1). The victim testified that defendant's shoe was a Romeo work shoe: "It's a Romeo. It's a type of work shoe in the line of—like you'd call it country-looking wear." The victim further testified that the boot was "pretty decent" in terms of heaviness. Finally, the victim testified that she could not open her eyes for a couple of days, that the doctor had to pry her eye open, and that her eye took a couple of months to heal. Given that evidence about the nature of defendant's shoe and the extent of injury inflicted, it is not obvious to us that the evidence about defendant's footwear was insufficient to permit a finding that defendant's shoe

was readily capable of causing serious physical injury under the circumstances in which defendant used it.

In arguing to the contrary, defendant emphasizes *State v. Werder*, 112 Or App 179, 828 P2d 474 (1992), in which we concluded that the evidence was insufficient to permit a finding that the defendant's tennis shoes were used as a dangerous weapon when the defendant kicked the victim. Defendant urges us to conclude that the facts in this case are so closely aligned to those in *Werder* that it is necessarily obvious that, as in *Werder*, the evidence is not sufficient to permit a finding that the shoe was readily capable of causing serious physical injury under the circumstances in which defendant used it. In *Werder*, however, there was "no description of [the] tennis shoe in evidence." 112 Or App at 182. Here, the record offers more about the character of the shoe: a decently heavy Romeo-style work shoe.[1] Given that difference between the record in this case and the one in *Werder*, it is not obvious that *Werder* compels the conclusion that the evidence here is insufficient to support a finding that defendant's shoe was a dangerous weapon under the circumstances in which he used it.

With respect to defendant's second assignment of error, the state concedes that the trial court erred when it did not instruct the jury with respect to the "knowing" culpable mental state applicable to the dangerous weapon element of second-degree assault. The state further concedes—correctly—that the error is plain. The state argues nevertheless that we should decline to exercise our discretion to correct the error. We are persuaded by that argument. On this record, we think it unlikely that the jury, if properly instructed, would have harbored any reasonable doubt as to whether defendant knew, within the context of stomping on the victim's eye, that his Romeo work shoe was readily capable of causing serious physical injury to the victim.

Affirmed.

---

[1] For a juror (or reader) familiar with footwear styles, the fact that a Romeo-style work shoe would be readily capable of causing serious physical injury when used to kick a person in the eye might be a matter of common sense. For those with less familiarity with footwear, a Romeo is "a man's slipper or shoe with a high backing quarter, high front, and usu. U-shaped elastic gores at the sides." *Webster's Third New Int'l Dictionary* 1971 (unabridged ed 2002).