Submitted on remand from the Oregon Supreme Court January 13, reversed and remanded April 19, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MATTHEW RYAN PIERPOINT,
aka Paul Daniel Dupre,
aka Matthew R. Matty-P,
aka Matthew Pierpoint,
aka Matthew R. Pierpoint,
aka Jeffrey Thomasson,
*Defendant-Appellant.*

Jackson County Circuit Court
19CR56764, 19CR60265;
A173477 (Control), A173478

528 P3d 1199

On remand from the Supreme Court for reconsideration in light of *State v. Chitwood*, 370 Or 305, 518 P3d 903 (2022), the Court of Appeals reconsidered its decision in *State v. Pierpoint*, 317 Or App 666, 504 P3d 5, *vac'd and rem'd*, 370 Or 602, 521 P3d 489 (2022), affirming without opinion defendant's convictions after a jury trial of fourth-degree assault constituting domestic violence, two counts of strangulation constituting domestic violence, menacing constituting domestic violence, second-degree criminal mischief, and six counts of witness tampering. *Held*: Under the Supreme Court's analysis in *Chitwood*, the Court of Appeals concluded that the prosecutor's misconduct during rebuttal closing argument in commenting on defendant's reasons for not testifying and on the burden of proof in grand jury proceedings constituted plain error that could not have been corrected with an instruction and that resulted in the denial of a fair trial. The court exercised its discretion to correct the error and reversed defendant's convictions.

Reversed and remanded.

On remand from the Oregon Supreme Court, *State v. Pierpoint*, 370 Or 602, 521 P3d 489 (2022).

Laura A. Cromwell, Judge.

Submitted on remand January 13, 2023.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Colm Moore, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

Reversed and remanded.

**TOOKEY, P. J.**

We affirmed without opinion defendant's convictions after a jury trial of fourth-degree assault constituting domestic violence, two counts of strangulation constituting domestic violence, menacing constituting domestic violence, second-degree criminal mischief, and six counts of witness tampering. *State v. Pierpoint*, 317 Or App 666, 504 P3d 5, *vac'd and rem'd*, 370 Or 602, 521 P3d 489 (2022). Defendant filed a petition with the Supreme Court, which allowed review and remanded the case to us for reconsideration in light of *State v. Chitwood*, 370 Or 305, 518 P3d 903 (2022). *State v. Pierpoint*, 370 Or 602, 521 P3d 489 (2022). We reconsider defendant's assignments in light of *Chitwood* and reverse and remand defendant's convictions.

Defendant was charged with the above-described offenses after the victim called 9-1-1 dispatch to report that defendant—her boyfriend—had beat her up. Deputy Vial testified at trial that when he arrived at the victim's location, she was crying and distraught. He testified that the victim told him that she and defendant had been arguing and that, when she attempted to leave, defendant "broke out the front [car] window, grabbed ahold of her, strangled her, took her out of the car physically, strangled her, and then began to drag her back to the trailer." Vial testified that the victim told him that while defendant was choking her, he stated, "I'm going to fucking kill you." The victim told Vial that she was then able to return to the car and drive away. Vial testified that he observed cuts and blood on the victim's face, two finger marks on her throat, and scrapes and marks on her legs. The victim explained that the cuts on her face were from the broken car window, that other bruising and cuts were caused by defendant dragging her, and that the fingerprints on her throat had resulted from defendant choking her. Vial took pictures of her injuries that the state introduced into evidence. The victim told Vial that when defendant was choking her, she could not breathe and feared for her life. Vial testified that, at his request, the victim sent him additional photographs of her injuries and the damage to her vehicle. Those photos were in evidence.

Vial also testified that he interviewed defendant on the same day and that defendant acknowledged having argued with the victim and accidently breaking the car window but denied assaulting her. Vial placed defendant under arrest and took him into custody.

The record includes jail recordings of six telephone exchanges between the victim and defendant in which defendant urged her not to come to court, to invoke her right to remain silent, or to recant her pretrial statements concerning the incident.

At trial, the victim testified that she did not remember what she told to Vial and recanted her report of defendant's alleged assault. She and a young friend who was present during the events testified that the victim's injuries were accidental. The jury convicted defendant.

On appeal, among other assignments, defendant asserted plain error with respect to the trial court's failure to *sua sponte* declare a mistrial or to instruct the jury relating to misconduct by the prosecutor. Defendant contended that, during rebuttal closing argument, the prosecutor committed misconduct in the form of improper statements describing the role of the grand jury; speculating on why defendant did not testify; describing defendant's witness tampering conduct as "weaponizing" his right to confront witnesses; arguing that acquittal would constitute an endorsement of defendant's witness tampering; and telling the jury, "Don't send [defendant] back to [the victim]." The state responded that the prosecutor's comments, viewed in context, were not misconduct or improper. We rejected defendant's assignments and, as noted, affirmed defendant's convictions without opinion.

The Supreme Court allowed defendant's petition for review and has remanded the case to us for reconsideration in light of *Chitwood*. In *Chitwood*, the court had before it the question how to analyze as plain error an assignment relating to prosecutorial misconduct during rebuttal closing argument. The defendant in that case had been charged with sexually abusing his then-13-year-old stepdaughter. *Id.* at 307. During rebuttal closing argument, the prosecutor made several improper statements:

The prosecutor reminded the jury about a statement that had been made by a prospective juror that he had been falsely accused of a sex crime and that his accuser had "washed out because it was false. And this is not false[.]" The court explained that that comment was improper, because it encouraged the jury to decide the case on a basis other than the evidence in the record. 370 Or at 314-15.

In addition, the trial court in *Chitwood* had instructed the jury that, under the "beyond a reasonable doubt" standard of proof, it must reach a verdict of not guilty "if, after careful and impartial consideration of all the evidence in the case, you are not convinced to a moral certainty that the defendant is guilty." In rebuttal argument, the prosecutor told the jury,

> "Deep down in your core is your moral core and that's where you're deciding this case from. Moral certainty. And if, after considering all the evidence, and again, I encourage you to listen to and look at everything that you see here today. Based on the evidence presented to you, without bias or sympathy for anyone, if you determine that [defendant] should not reside with an adolescent girl, that's your moral certainty and I have proven my case beyond a reasonable doubt."

The Supreme Court explained that that argument was improper in two respects: It told the jurors that they could find the defendant guilty if they "determine[d] that defendant should not reside with an adolescent girl," which was not consonant with the elements of the offense that the state was required to prove. It also told the jury that "moral certainty" meant that the jury should decide the case based on "the jurors' moral sensibility about an irrelevant circumstance rather than their certainty about defendant's guilt based on the evidence presented." *Id*. at 317.

As in this case, the defendant in *Chitwood* had not sought a mistrial or requested a curative instruction to remedy the improper statements, and the trial court did not *sua sponte* grant a mistrial or correct the statements. The defendant was convicted and sought reversal based on plain error.

On appeal, the defendant asserted that he had been denied a fair trial because of the prosecutor's improper

comments and contended that the trial court should have *sua sponte* granted a mistrial. Although no "error" had been committed by the trial court, the Supreme Court explained that prosecutorial misconduct could be remedied as plain error if it had resulted in the denial of a fair trial. The court provided a survey of its case law relating to review for plain error when the asserted unpreserved "error" was committed by the prosecutor. Even in the absence of preservation, the court explained, appellate review is permitted, and reversal may be warranted, if "it is beyond dispute that the prosecutor's comments were so prejudicial as to have denied defendant a fair trial." *Id.* at 312 (citing *State v. Montez*, 324 Or 343, 347, 356, 927 P2d 64 (1996)). The court explained, citing *State v. Davis,* 345 Or 551, 582-83, 201 P3d 185 (2008) (quoting *State v. Jones*, 279 Or 55, 62, 566 P2d 867 (1977) (internal quotation marks omitted)), that, although, generally, a proper jury instruction is adequate to cure any presumed prejudice from a prosecutor's misconduct, some prosecutorial statements are "so prejudicial that, as a practical matter, the bell once rung, cannot be unrung by such an admonishment." *Chitwood*, 370 Or at 311. In that instance, the court said, an instruction is not sufficient to ensure a fair trial, and the court must grant a mistrial; the failure to grant a motion for mistrial would constitute an abuse of discretion. *Id.* The appellate court's ultimate responsibility, the court explained, is to decide "whether, under the circumstances as a whole, defendant was denied the right to a fair trial, as a matter of law, by the events that transpired at trial." *Id.* at 312 (citing *Davis*, 345 Or at 583).

　　　　The court explained in *Chitwood* that, in the plain error context relating to a prosecutor's improper statements during rebuttal closing argument, the defendant's burden to show error in failing to grant a mistrial is the same as when the error is preserved: The defendant must show not only that the prosecutor's comments were improper or impermissible, but that the prosecutor's comments were so prejudicial that an instruction to disregard them would not have been sufficiently curative to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial. In that situation, the court explained, the denial of the right to a fair trial indicates "plain error." *Chitwood*, 370 Or at 312.

In determining whether plain error occurred, the court explained, the court must first determine whether the asserted unpreserved error is "plain." The error is "plain" when (1) it is one of law; (2) it is obvious and not reasonably in dispute; and (3) it appears on the record. *Id.* at 314. We proceed with that analysis here.

It is undisputed that the claimed errors here appear on the record, satisfying the third plain-error prong. We must then determine under the second plain-error prong whether the prosecutor's statements were obviously improper or impermissible, *i.e.*, whether it was obvious or not reasonably disputed that the prosecutor's statements allowed the jury to consider facts that had not been received into evidence, or otherwise encouraged the jury to decide the case on an improper basis. *Chitwood*, 370 Or at 314-17; *see also State v. Brunnemer*, 287 Or App 182, 187-88, 401 P3d 1226 (2017) (describing as prosecutorial misconduct appealing to the jurors' "prejudices, fears, or notions of popular sentiment by presenting to them inadmissible evidence; or urging them to make inferences not based on the evidence; or to disregard the evidence altogether and base their determination on wholly irrelevant factors." (quoting *State v. James Edward Smith*, 4 Or App 261, 264, 478 P2d 417 (1970)).

In several assignments, defendant challenges statements made during the prosecutor's rebuttal argument that he contends urged the jury to decide the case on improper bases. We have considered each of the prosecutor's statements identified by defendant's assignments of error and the contexts in which they were made. Two of them we can readily identify as obviously improper, and we discuss them below.

In his second assignment, defendant challenges as improper the prosecutor's mention of the grand jury process during rebuttal closing argument. During closing argument, in explaining his view of the jury as factfinder, defendant first described how the investigating police officer makes a decision to write a citation or to refer a case to the district attorney and then described the grand-jury process:

"[DEFENSE COUNSEL:]   It starts with [the police officer], all right. He has a role. His role is to get some report.

He goes out and collects evidence, does some investigation work, and if he draws a conclusion that there's *probable cause* that a crime may have occurred, may have occurred—his role is not to determine that a crime did occur. His role is to determine whether there is reason to believe that a crime might have occurred, and if that's sufficient to meet the standards of law enforcement, then he writes up a citation or a charging document and either takes the person into custody, formally charging them or cites them to come to court later. And the case goes elsewhere. It goes to the district attorney's office in a case like this to make a formal charging decision. The power shifts from law enforcement to the district attorney's office.

"And then one of the systems that we have that protects justice is that *** the district attorney doesn't have absolute power, even with regard to charging [defendants]. They have to first go through a grand jury process and get it passed on by a grand jury to agree that there's, again, *reason to believe that a crime may have occurred.* At that point, a grand jury returns this thing called an indictment. That's the actual charging instrument that alleges that my client did these things that [the prosecutor], on behalf of the State, is arguing that he did. And we present evidence.

"And now the power goes to you folks, and you're the ones who have to decide. It's not up to me. It's not up to [the prosecutor]. It's not even up to the judge because this is a jury trial.

"*****

"And so we have this thing called reasonable doubt. It's a high standard, much higher, much, much higher than that probable cause standard, and that's the standard that you folks have to apply. The State brought this case on—initially on probable cause, and they presented evidence to try to persuade you that it's actually much higher than that; that somehow—somehow they've proven that my client is guilty beyond a reasonable doubt."

(Emphases added.)

In rebuttal, the prosecutor attempted to clarify defense counsel's explanation. The prosecutor explained that the police first make a decision whether to charge based on probable cause, and that the grand jury must then

determine whether the uncontroverted evidence presented to it would establish the offense beyond a reasonable doubt:

> "[PROSECUTOR]:  The case goes to the grand jury. [Defense counsel] says it's a probable cause standard. It's actually a different standard. Jurors, as yourself, they determine whether, based upon the evidence presented, uncontroverted[,] that there is beyond a reasonable doubt evidence. So just to clear that up for you all. It's not like this is the first—you know, this is the first time, you know. This has definitely been looked at multiple times. But it is before you now. You are the sole trier of this case."

The prosecutor's comment was obviously improper, because it implied to the jury that a grand jury had previously determined defendant's guilt beyond a reasonable doubt, which was incorrect. *State v. Reinke*, 354 Or 98, 121, 309 P3d 1059 (2013); *State v. Walley*, 1 Or App 189, 190, 460 P2d 370 (1969) (the grand jury function is to determine the existence of probable cause). The impression that the prosecutor sought to convey was that a jury had previously determined that defendant was guilty beyond a reasonable doubt, which was contrary to the presumption of innocence to which a defendant is constitutionally entitled. *See State v. Soprych*, 318 Or 306, 507 P3d 276 (2022) ("Prosecutorial statements that distort the presumption of innocence can necessitate a mistrial.").[1]

In his third assignment of error, defendant challenges the prosecutor's feigned speculation concerning the reasons for defendant's decision not to testify, which we conclude was obviously improper. We address that comment.

In his closing argument, defense counsel suggested to the jury that the evidence favorable to defendant made it unnecessary for him to testify:

---

[1] If, as the state argues, the prosecutor's intention was merely to correct a misimpression conveyed by defense counsel, the assumption underlying that intention was erroneous. Additionally, if the prosecutor believed that defense counsel's description introduced irrelevant facts for the jury's consideration, the appropriate response was an objection to the argument, not a resort to "self-help" based on more facts not in evidence. *See Cler v. Providence Health System-Oregon*, 349 Or 481, 490, 245 P3d 642 (2010) (holding that lawyer's reference to information outside the evidentiary record was improper under OEC 103(3) and required reversal).

"But reality is, well, [the victim] testified under oath that [defendant] is not guilty, okay. *** [The victim's friend] came in, and he testified under oath that my client is not guilty. Okay. [Defendant] didn't take the stand. He didn't really need to. Did he?"

The prosecutor objected. The court overruled the objection but ruled that the prosecutor would be permitted to respond, because defendant had "opened the door."

The prosecutor responded in rebuttal by seeking to defeat any implication that defendant did not need to testify because the state's case was weak:

"There is nothing to take from [defendant] not testifying. We have a Fifth Amendment right not to incriminate ourselves, Fifth Amendment right if you don't want to, if you're accused, to take the stand, you know. You don't have to subject yourself to cross examination from the State, right.

"You're not to take from it, well, he didn't testify, so the State's case must be weak. Because necessarily, *not that I'm going to make that argument, I could say, he didn't want to face me. He didn't want to be confronted with the pictures. He didn't want to be confronted with his voice on jail [calls]. He didn't want to be subject to cross-examination. I'm not making that argument because it shouldn't be made.* There's nothing to take from him not testifying. It's his right. We're going to respect it. But none of this, well, he didn't really have to testify, did he?"

(Emphasis added.) On appeal, defendant asserts that the italicized argument was an improper comment on defendant's decision not to testify.

Both the Oregon Constitution and the United States Constitution preclude a prosecutor from drawing the jury's attention to a defendant's exercise of the right to remain silent. *State v. White*, 303 Or 333, 340-41, 736 P2d 552 (1987). As the state acknowledges, it is not appropriate for the prosecutor to call attention to or comment on a defendant's decision not to testify. *State v. Larson*, 325 Or 15, 22-23, 933 P2d 958 (1997). But when a defendant opens the door by first referencing the defendant's decision not to testify, the prosecution may respond. However, that ability

to respond does not allow the prosecutor to argue that the defendant is guilty because he invoked the right to remain silent; rather, the response must be limited to evidence or argument that rebuts the impression created by the defendant. *State v. Reineke*, 266 Or App 299, 308-09, 337 P3d 941 (2014). The question whether the prosecutor's statements constituted an improper comment on defendant's right to remain silent, so as to satisfy the second plain-error prong, is a question of law that we review for legal error. *Id.* at 307.

The state contends that the statements were not improper, because defense counsel opened the door on the topic of defendant not testifying, which, as the trial court concluded, allowed the state to respond. The trial court was correct that defense counsel's opening of the door allowed the state to counter the implication that the evidence favored defendant or that the state's case was weak. The state could have countered that implication by pointing to the strength of the state's case. The state certainly did that. But defense counsel's comments did not authorize further commenting by the prosecutor on defendant's decision not to testify or free-form speculation as to other reasons why defendant might have chosen not to testify. The prosecutor's statements were too clever; by describing what he could not argue, the prosecutor indirectly invited the jury to consider reasons why defendant may have decided not to testify. The prosecutor's statements—"I'm not making that argument because it shouldn't be made. There's nothing to take from him not testifying. It's his right. We're going to respect it."— did not remedy the impropriety. *See State v. Banks*, 367 Or 574, 481 P3d 1275 (2020) (A suggestion that the state has more evidence that it can present is an "open invitation for the jury to speculate," [*State v. Wederski*, 230 Or 57, 61, 368 P2d 393 (1962)], and making such a suggestion and then telling the jury not to speculate is, at best, inconsistent."). Those statements were obviously improper, thus satisfying the second plain-error prong.

The remaining question, which relates to the first plain-error prong, is whether the improper prosecutorial conduct constituted "legal error" in the sense required for plain error review. In *Chitwood*, the Supreme Court explained that, in the unique context of plain error review

of a prosecutor's improper statements, statements are "legal error," so as to constitute plain error, if they were so prejudicial that an instruction to disregard them would not have been sufficiently curative to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial. 370 Or at 312. *See State v. Flores*, 31 Or App 187, 190, 570 P2d 94 (1977) (When faced with improper remarks to a jury, a trial court must determine whether the remarks have a likelihood of prejudicing the defendant's right to a fair trial if the trial continues, or if curative instructions may ameliorate whatever prejudice resulted from the improper conduct.). In other words, the misconduct constitutes "legal error" if it would have been an abuse of discretion for the trial court to deny a motion for a mistrial had one been made. In addressing that issue in *Chitwood* and concluding that the comments constituted "legal error," the court cited the collective effect of the prosecutor's incorrect characterization of the burden of proof, the influential timing of the prosecutor's misstatement at the end of rebuttal, the prosecutor's suggestion to the jurors that they could decide the defendant's guilt based on emotional factors that were not elements of the offense, and the closeness of the case. *Id*. at 317-21. The court concluded: "The error was one of law because the statements were so prejudicial that, if defendant had objected and moved for a mistrial, the trial court would have committed legal error had it denied the motion." *Id*. at 321.

We have reviewed the record here and conclude that the two instances of prosecutorial misconduct—the misdescription of the grand jury standard of proof and the comments relating to defendant's decision not to testify, both highly improper—when considered together, were so prejudicial that they could not have been cured by an instruction. In *Chitwood*, the prosecutor's misstatement of the burden of proof "was the final word on the meaning of reasonable doubt." 370 Or at 318. Here, as in *Chitwood*, the prosecutor's improper comments also occurred during rebuttal.

In *Chitwood*, the prosecutor's remarks encouraged the jury to decide the case on an improper basis—if it "determine[d] that defendant should not reside with an adolescent girl," which was not an element of the offense. The prosecutor

in *Chitwood* also implied that the jury could consider evidence that was not in the record—the prospective juror's description of charges that had been fabricated against him. Here, the prosecutor's comments about defendant's decision not to testify invited the jury to speculate that defendant chose not to testify because he did not want to be confronted with evidence of his guilt. *See State v. Schumacher*, 315 Or App 298, 301, 500 P3d 698 (2021) ("Reference to a defendant's exercise of a constitutional right jeopardizes the right to a fair trial if the jury was likely to infer that the defendant had exercised the right because he believed that he was guilty of the charged offense.").

Finally, in *Chitwood*, the court noted that the case was a "close" one—there was no physical evidence against the defendant, and "the case came down to a credibility contest between defendant and the victim." *Id.* at 321. That factor, considered in light of all of the improper statements, led the court to conclude that the prosecutor's comments were so prejudicial as to have denied defendant a fair trial.

Here, unlike in *Chitwood*, the case was not close or a simple credibility contest. Although the victim recanted her statements to Vial and also testified that she had felt no pressure from defendant not to testify, the record includes Vial's testimony describing the victim's statements at the time of his response to her call, as well as the physical evidence of the assault, strangulation, menacing, and second-degree criminal mischief charges. Additionally, the record includes recordings of defendant's phone conversations with the victim in support of the witness tampering charges.

But while there was evidence in support of defendant's guilt, there was also evidence in support of his contention that the victim had fabricated her report to Vial. The fact that there was evidence in support of conviction does not outweigh the potential adverse effect of the prosecutor's improper statements relating to the presumption of innocence and defendant's decision not to testify. In the context in which the comments were made, they asked the jury to consider improper criteria in weighing the evidence and could not have been remedied by a curative instruction telling the jury to disregard them. *Cf. Davis*, 345 Or at 582-83

(Generally, a proper jury instruction is adequate to cure any presumed prejudice from a prosecutor's misconduct.). As in *Chitwood*, the combination of prosecutorial misstatements would have been hard for the jury to disregard, even with a curative instruction. 370 Or at 311-12. Viewing the record as a whole, we conclude that the improper conduct was so prejudicial that, if defendant had objected and moved for a mistrial, the trial court would have abused its discretion in denying the motion. We conclude, therefore, that the prosecutor's misconduct constituted "legal error" under the first plain-error prong that we may review as plain error.[2]

As in *Chitwood*, 370 Or at 322, here, given the gravity of the errors, we exercise our discretion to correct them. We therefore reverse defendant's convictions.

Reversed and remanded.

---

[2] In view of our conclusion, we need not address defendant's remaining assignments.