54 June 4, 2025 No. 487

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOHN PATRICK CLARK, JR.,
aka John John Clark,
*Defendant-Appellant.*

Deschutes County Circuit Court
20CR53702; A181414

Alison M. Emerson, Judge.

Argued and submitted November 19, 2024.

Stacy M. Du Clos, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Jordan R. Silk, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and DeVore, Senior Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

Defendant appeals a judgment of conviction for second-degree rape and three counts of first-degree sexual abuse against his ex-girlfriend's daughter, A. He raises six assignments of error, and we address only the first, because it is dispositive. In his first assignment of error, defendant argues that the prosecutor's remarks to the jury at the close of the trial amounted to plain error, and that they were so improper that it deprived him of a fair trial. Following the analysis from *State v. Chitwood*, 370 Or 305, 518 P3d 903 (2022), we agree with defendant. We therefore reverse and remand.

We recount the evidence and procedural history that relate to the issues on appeal. When A was in seventh grade, defendant was dating her mother, R. R and defendant decided that defendant would move into R's home. Defendant's probation and post-prison supervision officer met with R and defendant to set "rules" for the household that were conditions for defendant to live there. The rules prohibited defendant from being in the house without either R or R's mother present, prohibited him from disciplining the children, prohibited inappropriate play, children being on defendant's lap, extensive hugging, or sleeping in the same bed. The rules required everyone to be dressed appropriately and to undress behind closed doors, and that bathroom doors remain locked when in use.

Both defendant and the prosecution wanted the jury to have evidence of those household rules. Defendant wanted evidence of the rules to show that defendant was not allowed to be alone with the children. That served to explain his testimony that he abided by the rules, and that he was never alone with A, meaning that A's accusations were false. The prosecution wanted evidence of defendant's convictions for the purpose of evaluating defendant's credibility. The trial court allowed testimony about the household rules, but excluded the rules document itself and evidence of the specific crimes of which defendant was convicted.[1]

---

[1] Defendant does not assign error to the trial court's tailoring of evidence.

At trial, A testified, as well as A's mother, grand-mother, a forensic interviewer, and a nurse practitioner to whom A had disclosed sexual abuse by defendant. A testi-fied that defendant would tuck her in at night and touch her in progressively more intimate places, beginning with him touching her outer thigh and culminating with him touching the front of her vagina. A also testified that, once, when she was home alone, defendant raped her. She recounted, "He was just kind of on top of me, and it just happened pretty quickly. And then he just kind of left." She was specific, describing "unconsensual [*sic*] sex, penis in the vagina," adding, "It hurt."

A also testified about a subsequent forensic inter-view and medical examination she participated in after dis-closing the rape. On cross-examination, A admitted, among other things, that, when she had been asked "how her body felt during sex," she did not say that it hurt. At trial, she testi-fied, "I can definitely remember that it hurt now." Defendant testified that the events A described never happened.

The state's rebuttal argument is the basis for defen-dant's first assignment of error. Defendant asserts that numerous prosecutorial statements were improper; we focus our analysis on three. In the first improper statement, the prosecutor referred to defendant multiple times as a "predator":

"[Defendant] is a predator. That's what he is.

"He preyed on one of the weakest members of our com-munity. What did he tell you? Shy. She's withdrawn. She's honestly the perfect victim. She is the person who is least likely to report.

"Predators—child sexual assault predators prey on their victims, and then they come to court and they prey on [you]. And what they want you to do is think of all the reasons why you shouldn't believe [victims]."

Later on in her rebuttal, the prosecutor made two comments specific to defense counsel:

"I think what is a little bit frustrating is the process of [the] forensic interview. Again, a situation that's sort of created by the defense and then criticized by the defense,

right? \*\*\* [I]n the state of Oregon, we've adopted foren-
sic interviewing of children because the defense would
argue that we were leading victims, that they were being
given information, so we're put in this situation. We have
to ask children these incredibly open-ended, non-specific,
frankly, unhelpful questions, and then they're criticized
that they didn't provide all of the information. It's a lose-
lose situation."

And in response to defendant's closing argument that A
would have remembered how it felt when she was raped, the
prosecutor called out defense counsel directly:

"Was it painful? I don't usually get on a feminist high
horse, but I think it's somewhat insulting that a fully grown
man is going to tell any of us how an 11-year-old girl feels
having sex for the first time.

"Which[—]would that cause bleeding? I don't know.
According to the medical expert, not necessarily. According
to [defense counsel], it probably would."

Defendant did not object to any of those remarks
at trial. Prior to sentencing, however, defendant moved
for a new trial on the basis of the prosecutor's "predator"
comment, arguing that the comment amounted to prose-
cutorial misconduct that violated his due process rights
and deprived him of a fair trial. The trial court denied
defendant's motion, noting that the state did not directly
implicate any of defendant's constitutional rights in the
prosecutors' statements.[2] The court considered the impact
of *Chitwood*—in particular, noting that prosecutors may
"'with earnestness and vigor \*\*\* strike hard blows,'" 370
Or at 327 (quoting *Viereck v. United States*, 318 US 236,
248, 63 S Ct 561, 87 L Ed 734 (1943))—but ultimately
determined that, because defendant failed to object to the
remarks at trial, and the remarks were not "problematic on
their face," defendant should not receive a new trial.

---

[2] The court reasoned that "the state did not manipulate or misstate the evi-
dence, [it] did not implicate other specific rights of the accused, such as the right
to remain silent or the right to counsel, which is the basis [on] which those cases
rest on that led to a new trial, and much of the objectionable content was poten-
tially maybe even invited by or in response to the arguments that were made by
the defense in their closing argument."

On appeal, defendant argues that the remarks were so improper that, had he objected, no curative instruction would have sufficed—the remarks plainly denied defendant a fair trial. *See Chitwood*, 370 Or at 312 ("[A] defendant asserting plain error must demonstrate that the prosecutor's comments were so prejudicial that an instruction to disregard them would not have been sufficiently curative to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial.").

We agree with defendant's assessment. Here, several of the prosecutor's statements were plainly improper, and indisputably so. *See State v. Perez*, 373 Or 591, 600, ___ P3d ___ (2025) (in plain error review, prosecutor's comments must be "indisputably impermissible" (citing *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013)). The prosecutor argued that defendant was a "predator" who "preyed on" both A and the jury. That language risked inflaming the jury's emotions on predators and child sexual abuse, and heightened the risk that the jury would decide the case on an improper basis. *See Chitwood*, 370 Or at 317 (prosecutor's comments that "appealed to the jurors' moral sensibility about an irrelevant circumstance" were improper and urged jurors to decide case on improper basis). The jury had already heard that defendant was on probation and post-prison supervision and, as a result of that status, was required to abide by certain rules governing his interactions with children. The jury did not hear, however, the nature of defendant's underlying offenses. In fact, the parties were careful to exclude reference to defendant's prior convictions for other sex crimes, so that the jury would not convict defendant based on that conduct. The prosecutor's comments could have led the jury to speculate that defendant had been previously convicted for child sexual abuse, or had a habit of preying sexually on children. *See State v. Davis*, 372 Or 618, 635-36, 553 P3d 1017 (2024) ("[E]vidence *** that is offered solely to prove that a person acted in conformity with their character 'generally will have little or no cognizable probative value, and the risk that the jury may conclude improperly that the defendant had acted in accordance with past acts on the occasion of the charged crime will be substantial.'" (Quoting *State v. Williams*, 357

Or 1, 20, 346 P3d 455 (2015).)); *State v. Banks*, 367 Or 574, 585, 481 P3d 1275 (2021) (prosecutor may not imply that additional evidence exists because such a reference "injects extrinsic and prejudicial matter into the trial and constitutes an open invitation for the jury to speculate" (citations and internal quotation marks omitted)).

The prosecutor, repeatedly, asserting that defendant "*is* a predator," was a bell that could not have been unrung. Or, put differently, there was not "more than one way that the jury could have understood each of those comments," *Perez*, 373 Or at 607; the jury certainly could not have understood them as arguing that the prosecution had proved the facts of the case beyond a reasonable doubt, rather than urging them to decide the case on an improper basis.[3]

Additionally, the prosecutor, responding to the defense argument concerning inconsistencies between A's testimony and other witnesses' accounts of what she told them, attributed those inconsistencies to "the defense" forcing the state to adopt forensic interviewing protocols that require questions that are "non-specific" and "frankly unhelpful." The state concedes this argument was improper, a concession that is well taken.[4] Citing *State v. Durant*, the state argues, however, that the improper remarks do not amount to reversible error because they could have been

---

[3] We do not review the trial court's denial of defendant's post-trial motion for a new trial. *See State v. Puckett*, 332 Or App 64, 65-66, 548 P3d 167, *rev den*, 372 Or 787 (2024) (regarding our authority to review motions for new trial); *see also* ORS 138.105(4)(a) (limiting grounds to juror misconduct or newly discovered evidence). Nevertheless, our conclusion is essentially the same as it would have been if we were reviewing the trial court's denial of a timely motion for mistrial during closing argument. That is, denial of a timely motion for mistrial would have been an abuse of discretion in light of the same irreparable prejudice we here recognize. *See Perez*, 373 Or at 605 (noting that, in preserved context, trial court abuses its discretion by not declaring mistrial when improper prosecutorial comments deny defendant a fair trial "because no curative instruction would have been effective").

[4] In addition to being improper, the state's assertion is wrong. The Forensic Interviewing Protocols were not designed because "the defense" forced the state to adopt them. Rather, they reflect the concern that the forensic interview should be conducted in a manner that is "legally sound, of a neutral, fact-finding nature, and are coordinated to avoid duplicative interviewing." Oregon Department of Justice, *Oregon Interviewing Guidelines* 7 (4th ed 2018), *available at* https://www.doj.state.or.us/wp-content/uploads/2018/03/OIG-2021-Final.pdf (accessed May 28, 2025).

adequately addressed by a curative instruction. 327 Or App 363, 535 P3d 808 (2023).

The state's reliance on *Durant* is misplaced. In *Durant*, the prosecutor used phrasing that was "not ideal" in arguing that "[a] defendant has the right to go to trial and put the state to its burden of proof, but that it does not necessarily follow that there is reasonable doubt in every criminal trial." *Id.* at 371. We concluded that, although "the prosecutor's statements were not ideal, they also were not egregious" because, in context, the prosecutor was making a permissible point: that small gaps in evidence do not necessarily mean that there is reasonable doubt. *Id.* at 371-72. By contrast, here, the prosecutor was not making a permissible point; rather, she made several improper comments that consistently directed the jury's attention to matters outside of the evidence. Considering the context and content of the multiple statements, a curative instruction would not have sufficed. *See Perez*, 373 Or at 609 ("[A]s *** *Chitwood* suggests, context matters.").

Finally, in addition to disparaging defense *procedures*, the prosecutor disparaged defense *counsel* directly, when she characterized the argument of defense counsel as "somewhat insulting" insofar as a "grown man" would presume to suggest how A should have responded when asked "how an eleven-year-old girl feels having sex for the first time."

We have long held personal attacks on defense counsel to be impermissible. *State v. Lundbom*, 96 Or App 458, 461-62, 773 P2d 11, *rev den*, 308 Or 382 (1989). Such attacks may improperly elicit an emotional response from the jury; they may impugn the integrity of the judicial system as a whole; and they may overshadow what the case is really about. *Id.* We have reversed a judgment of conviction after denial of a motion for a new trial where the prosecutor described defense counsel as someone who knowingly hired a liar—an expert whom the prosecutor called a "pimp." *Id.* Similarly, we have reversed a judgment of conviction after denial of a motion for mistrial where a prosecutor personally attacked defense counsel in several ways. *State v. Brunnemer*, 287 Or App 182, 189-90, 401 P3d 1226 (2017).

The prosecutor had said that defense counsel was "not asking for justice," that defense counsel "mocked" the victim by probing inconsistencies in her testimony, and that defense counsel had referred to the victim, among other things, as a "moron." *Id.* at 185.

In this case, the prosecutor's slight of defense counsel was not so extreme. The prosecutor did not use an epithet or foul language and did not demean his appearance, behavior, professionalism, integrity, or representation of defendant. Rather, the remark implied that defense counsel was insensitive to the experience of a victim of sexual assault. Nevertheless, the prosecutor improperly personalized the arguments. The remark distracted from the issue and played on sympathy for the victim at counsel's expense.

Having concluded that all of those remarks were improper, we also conclude, considering the rebuttal argument as a whole and the evidence and issues at trial, that no curative instruction would have sufficed to ensure that defendant received a fair trial. *Perez*, 373 Or at 606 ("[T]o establish plain error based on a prosecutor's comments to a jury, the defendant must establish *both* that the comments were improper *and* that no curative instruction could have ensured a fair trial." (Citing *Chitwood*, 370 Or at 312; emphases in original.)). The prosecutor made the improper statements during rebuttal argument—the last thing the jury heard before deliberation. Moreover, when the prosecution's statements are improper, the timing and number of those statements can tip the scales and result in the defendant not receiving a fair trial. That is the case here. The number and breadth of the improper statements, touching on an array of improper subjects, make it clear that a curative instruction would not have sufficed. *See, e.g.*, *State v. Pierpoint*, 325 Or App 298, 309, 528 P3d 1199 (2023) (considering the cumulative effect of several improper prosecutorial statements).

The *Chitwood* court identified several reasons that a curative instruction would not have sufficed in that case, all of which weigh in favor of the same conclusion here. First, as in *Chitwood*, these statements came in rebuttal, after the jury was instructed. *See Chitwood*, 370 Or at 317-18 ("Because [the improper argument] was the last thing

the jury heard, its impact was likely to have been significant, insofar as a defendant had no opportunity to make a counter argument to the jury."); *see also Pierpoint*, 325 Or App at 309 (emphasizing that, as in *Chitwood*, prosecutorial misconduct that "occurred during rebuttal" warranted reversal).

Second, the prosecutor encouraged the jury to convict defendant on an emotional basis: because he was a "predator" who preyed on A, A's mother, and the jury itself. *See Chitwood*, 370 Or at 320 (a curative instruction would not have cured the "bell of misdirection * * *, directing the jury away from the facts toward emotion * * * [which was] difficult to unring"). Third, as in *Chitwood*, "the prosecutor compounded the error by referring to other irrelevant matters that were not in evidence" when she raised the issue of child forensic interviewing protocols and insulted defense counsel. *Id.* And, finally, as in *Chitwood*, the case was close. There was no physical evidence and the testimony was inconsistent. Indeed, "the case came down to a credibility contest between defendant and the victim." *Id.* at 321 (concluding that the closeness of the case weighed in favor of determining that no curative instruction could have sufficed); *see also Perez*, 373 Or at 603 (explaining that, in *Chitwood*, the closeness of the case was a relevant factor to consider).

Based on those factors, we conclude that the statements were improper and that they were not curable by striking them or giving an instruction. Defendant was denied a fair trial, as a matter of law, as a result.

When reviewing for plain error, we must also consider "whether the error was harmless and, if not, whether we should exercise our discretion to correct it." *State v. Horton*, 327 Or App 256, 262, 535 P3d 338 (2023). Because the error denied defendant his right to a fair trial, we conclude that the error was not harmless. *State v. Garcia*, 284 Or App 357, 363, 392 P3d 815, *rev den*, 361 Or 645 (2017) (if it is likely that an error "substantially affected the defendant's rights" it is not harmless). Further, we exercise our discretion to correct the error due to the gravity of the error, and in furtherance of the ends of justice. *Ailes v. Portland*

*Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991); *State v. Muniz*, 332 Or App 56, 63, 548 P3d 172, *rev den*, 372 Or 763 (2024) (correcting error in similar circumstances).

Reversed and remanded.